1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY MUSE,

        Plaintiff,

    v.

CITY OF DEL RAY OAKS, et al.,

        Defendants.

Case No. 17-cv-05323 NC

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 14

    In this civil rights case, plaintiff Henry Muse alleges that defendants the City of Del Rey Oaks and police chief Ronald Langford blacklisted him from further employment as a law enforcement professional after Muse left the Del Rey Oaks Police Department. This alleged blacklisting occurred through negative employer evaluations regarding Muse that Chief Langford provided to inquiring law enforcement agencies. Langford and Del Rey Oaks move to dismiss Muse's complaint under Federal Rule of Civil Procedure 12(b)(6).

    Because the Court finds that Langford's alleged statements regarding Muse, if indeed negative, were absolutely privileged under California Civil Code § 47(b), the Court GRANTS defendants' motion as to claims 1, 3, 4, 5, and 6. Those claims are DISMISSED WITH PREJUDICE. Muse also fails to state a claim under 42 U.S.C. § 1983 for defamation, so the § 1983 claim is also DISMISSED. Yet because the Court finds that Muse could plausibly amend his § 1983 claim, this claim is DISMISSED WITH LEAVE TO AMEND.

Case No. 17-cv-05323 NC

## I.    BACKGROUND

Muse was a Del Rey Oaks police officer until 2013, when he alleges he was "forced to leave the Department after being the subject of an intolerable pattern of racial discrimination." Dkt. No. 9 (First Amended Complaint) at 2, 4. Muse claims he left Del Rey Oaks because Sergeant Robert Ingersoll, one of Chief Langford's subordinates, "routinely" hurled racial epithets at him. Muse contends that Sgt. Ingersoll had been terminated from the neighboring Seaside Police Department for civil rights violations against African Americans, but that Chief Langford hired him anyway. *Id*. at 4. This lawsuit is not, however, about Muse's termination. *See id*. at 3.

Subsequent to leaving Del Rey Oaks, Muse sought employment in law enforcement in the San Diego Police Department, Fresno County Sheriff's Department, Santa Cruz Police Department, Hayward Police Department, Monterey County Sheriff's Department, Walnut Creek Police Department, Sacramento County Sheriff's Department, and Oakland Unified School District. *Id*. at 4. Muse was unable to gain employment at these agencies. Muse claims defendants are "haunting" him in his attempts to gain comparable employment through giving him negative reviews to prospective employers. *Id*. at 4-5. He claims Chief Langford and Del Rey Oaks are "blacklisting" him. *Id*. at 5. To support this contention, he cites to two incidents.

Officer Matthew Young, who appears to have been Muse's colleague at the department, received materials from Orange and Fresno Counties' background investigators regarding Muse. *Id*. at 4. Officer Young reportedly approached Chief Langford who told him: "I wouldn't even send it back. From what I'm going to tell them, they're never going to hire him." *Id*. (italics omitted). Chief Langford reportedly described Muse as "lazy" and that he "never did anything." *Id*. (italics omitted). Muse does not disclose language Chief Langford actually used in any of the reviews he submitted to Muse's prospective employers. The other instance Muse cites to is a question posed to him by a police department's background investigator. *Id*. at 5. According to Muse, the investigator asked him whether the people at the Del Rey Oaks Police

Department were racist, given that they were the only ones who gave Muse a negative evaluation. *Id.*

Muse filed this lawsuit on September 13, 2017, and the First Amended Complaint claims violations of: (1) California Labor Code § 1050 *et. seq.*; (2) 42 U.S.C. § 1983; (3) Unruh Civil Rights Act, California Civil Code § 51.5 *et seq.*; (4) Intentional Interference with Prospective Economic Advantage; (5) Negligent Interference with Prospective Economic Advantage; and (6) Defamation. Dkt. Nos. 1, 9. Defendants move to dismiss the First Amended Complaint. Dkt. No. 14. All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 7, 8.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

### A. Privilege Under California Civil Code § 47(a)-(c).

In their papers, defendants argue the entire complaint fails because the conduct

underlying the claims is "absolutely privileged" under Cal. Civil Code § 47.  Specifically, defendants argue that subsections (a), (b), and (c) of that section are all applicable to the statements Chief Langford allegedly made to background investigators.  Nonetheless, at the hearing on this motion, defendants conceded that § 47 would not apply to a claim under 42 U.S.C. § 1983.  Muse disputes that any of these subsections apply to any of his claims.  The Court will address each disputed subsection in turn.

### 1.  Applicable Law

In relevant part, Civil Code § 47 states:

> A privileged publication or broadcast is one made:
>
> (a) In the proper discharge of an official duty.
>
> (b) . . . (3) in any other official proceeding authorized by law,
>
> . . .
>
> (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.  This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant.

#### a.  Cal. Civil Code § 47(a) Does Not Render Chief Langford's Alleged Statements Privileged.

Defendants argue that Chief Langford's statements are privileged under § 47(a) because Langford "was carrying out his official duty as police chief of the City of Del Rey Oaks, responding to an inquiry from other law enforcement agencies."  Dkt. No. 14 at 16.  Muse argues that the statements are not privileged because they are not "official policy-making statements."  Dkt. No. 18 at 13 (citing *McQuirk v. Donnelley*, 189 F.3d 793, 800-01 (9th Cir. 1999)).  The Court finds that Muse is correct, and that *McQuirk v. Donnelley* is directly on point.  Though Chief Langford's statements might be privileged if they were "made in the discharge of an official duty that are related to a policy-making function,"

they were not. *McQuirk*, 189 F.3d at 801. *McQuirk* clearly distinguished between statements made at the planning level, as compared to the operational level. *Id.* At the planning level, an official reaches a "basic policy decision," whereas an operational decision is reached "after balancing the risks and advantages." *Id.* (quoting *Neary v. Regents of Univ. of California*, 185 Cal. App. 3d 1136, 1142 (1986)). The Court in *McQuick* found that negative performance statements made by the defendant sheriff, who was the plaintiff's former supervisor, to the plaintiff's prospective employer were operational judgments. *Id.* The statements were thus not privileged under Cal. Civil Code § 47(a). *Id.* Nor are the statements privileged under § 47(a) here.

### b. Cal. Civil Code § 47(b) Renders Chief Langford's Alleged Statements Privileged.

Defendants argue that a response to a prospective law enforcement employer's background investigation made in the course of an official proceeding authorized by law is "absolutely privileged." Dkt. No. 14 at 15. Muse argues that § 47(b)'s privilege does not apply here because that section only applies to discriminatory communications, not discriminatory conduct. Dkt. No. 18 at 11. In addition, Muse argues that Civil Code § 47.5 allows an exception to § 47(b). *Id.*

Defendants' privilege argument relies on *O'Shea v. Gen. Tel. Co.*, 193 Cal. App. 3d 1040 (1987) and *Bardin v. Lockheed Aeronautical Sys. Co.*, 70 Cal. App. 4th 494 (1999). In *O'Shea*, the lawsuit concerned negative factual statements made by the plaintiff's former employer, a state telephone company, in response to an inquiry by the California Highway Patrol, the plaintiff's prospective employer. 193 Cal. App. 3d at 1041. The court there held that the former employer's allegedly defamatory statements were absolutely privileged for public policy reasons under § 47(b)'s predecessor, § 47(2). *Id.* at 1048-49. The court found it "essential that former employers of those considered for peace officer positions feel free to discuss in detail the characteristics of their former employees, now being considered for the extremely demanding tasks undertaken by the peace officers of this state." *Id.* at 1048.

In a later case, *Bardin v. Lockheed Aeronautical Sys. Co.*, a California appellate court reaffirmed the finding in *O'Shea* by clarifying that the later-enacted California Government Code § 1031.1(b) did not overturn *O'Shea*'s holding. *Bardin*, 70 Cal. App. 4th 494, 504 ("Since we interpret section 1031.1, subdivision (b) to preserve common law and statutory privileges, respondents had an absolute privilege under *O'Shea*.").

Given that the statements in question are absolutely privileged, Muse makes a number of other creative arguments. Muse contends that his claims are for discriminatory conduct, and not for discriminatory communications. This contention is not well-taken. Muse contends that the illicit "conduct" is the "pattern and practice of blacklisting Plaintiff from being able to obtain a police officer position in the law enforcement community." Dkt. No. 18 at 11. Yet the only means by which Chief Langford allegedly blacklisted Muse was through communications. Muse did not allege any other "conduct."

Muse next argues that Civil Code § 47.5 provides an exception to § 47(b). *Id*. Section 47.5 provides:

> Notwithstanding Section 47, a peace officer may bring an action for defamation against an individual who has filed a complaint with that officer's employing agency alleging misconduct, criminal conduct, or incompetence, if that complaint is false, the complaint was made with knowledge that it was false and that it was made with spite, hatred, or ill will. . . .

Cal. Civ. Code § 47.5. This argument is nonsensical and makes hash of the statute. Muse is not a police officer. Nor has an individual filed a complaint with Muse's employing agency alleging misconduct. Muse may not bring claims 1, 3, 4, 5, and 6 on the basis of Chief Langford's allegedly defamatory statements against him. Those statements are privileged, and claims 1, 3, 4, 5, and 6 are DISMISSED WITH PREJUDICE.

### c. Cal. Civil Code § 47(c) Does Not Render Chief Langford's Alleged Statements Privileged.

Defendants also contend they are immune from liability for Chief Langford's alleged statements under Cal. Civil Code § 47(c) because that section "immunizes persons who, without malice, provide information to prospective employers when such prospective

employers are interested in the information and requested the information." Dkt. No. 14 at 16. Muse argues that he proffers sufficient allegations of malice, such that the statements cannot be considered immune under § 47(c) as a matter of law. Dkt. No. 18 at 13. Per Muse, "[t]he allegations show that Langford was a bigot and blacklisted Plaintiff because of his race. . . . Further, the racially motivated conduct within the police department [was] so prevalent and obvious that a background investigator asked Plaintiff after his interview, 'Are they racist there?'" *Id*.

Both parties appear to agree for purposes of this motion that if Chief Langford's statements were made without malice, they are privileged, but if they may have been made with malice, they are not. "Malice," for purposes of § 47(c), means "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 915 (2002) (citations omitted).

As required by Rule 12(b)(6), the Court must take all allegations of material fact as true, and construe them in the light most favorable to Muse. *Cahill*, 80 F.3d at 337-38. Muse alleges two facts that, taken as true, together raise an inference of malice. First, Muse alleges that Chief Langford hired Sgt. Ingersoll, who allegedly routinely hurled racial epithets at Muse, despite knowing of Ingersoll's alleged history of civil rights abuses against African Americans. Dkt. No. 9 at 4. The second alleged fact is that Chief Langford expressed an intention to send back to the background investigator such a negative performance review that Muse would never been hired. *Id*. This is an extremely close call, but the Court finds that together, these two facts raise a doubt regarding whether Chief Langford's statements to a background investigator were made with malice. The alleged statements made by Chief Langford are not privileged under Cal. Civil Code § 47(c).

### B. Muse Fails to State a Claim Under 42 U.S.C. § 1983.

Defendants move to dismiss Muse's § 1983 claim because (1) Muse cannot state a claim for defamation, and (2) Muse suffered no injury to a constitutional right. Dkt. No. 14 at 17-20. Muse disputes both points.

To prove a violation under § 1983, a plaintiff must show that (1) the defendant's conduct deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the defendant committed the act under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a claim under 42 U.S.C. § 1983 based on defamation, a plaintiff must do more than allege simple defamation by a state official. *Paul v. Davis*, 424 U.S. 693, 712 (1976). "Under that standard, to establish a deprivation of liberty, a plaintiff must show the public disclosure of a stigmatizing statement by the government, plus the denial of 'some more tangible interest such as employment,' or the alteration of a right or status recognized by state law." *Peter Turner v. City & Cty. of San Francisco*, No. 11-cv-01427 EMC, 2012 WL 6631490, at *6 (N.D. Cal. Dec. 19, 2012), *aff'd sub nom. Turner v. City & Cty. of San Francisco*, 788 F.3d 1206 (9th Cir. 2015), *and aff'd sub nom. Turner v. City & Cty. of San Francisco*, 617 F. App'x 674 (9th Cir. 2015) (brackets omitted) (quoting *Paul*, 424 U.S. at 701, 711).

"[A] plaintiff can meet the stigma-plus test for Section 1983 purposes by alleging either that (1) the injury to reputation caused the denial of a federally protected right (e.g., accusations made in the press by a prosecutor to deny a defendant an impartial jury under the Sixth Amendment); or (2) the injury to reputation was inflicted in connection with a federally protected right (e.g., defamation in the course of termination of public employment by the state)." *Eberhard v. California Highway Patrol*, 73 F. Supp. 3d 1122, 1130 (N.D. Cal. 2014) (citing *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991)).

### 1. Defamation

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010) (citation omitted). Muse claims on information and belief that "defendants" made defamatory statements to his prospective employers that Muse was lazy and never did anything. Dkt. No. 9 at 6. Muse alleges these statements are false and actually caused him damage in the form of lost job opportunities. *Id*. Furthermore, at the hearing on this motion, defendants conceded

that California Civil Code § 47 privilege does not apply to claims under 42 U.S.C. § 1983. Thus, any statements made by defendants would not be privileged.

Muse sufficiently alleged Chief Langford defamed him based on the review Chief Langford stated he intended to give Muse. But Muse's other statements are vague and contradictory. First of all, in his factual allegations, Muse alleges on information and belief that *Chief Langford* stated that he was lazy and never did anything to prospective employers. There are no allegations that the City of Del Rey Oaks, an entity, made such remarks. Furthermore, no facts are alleged regarding *when* the allegedly defamatory remarks were made, or *to whom* specifically. Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). Thus, to provide defendants with notice of what he alleges, Muse must allege with more detail the particulars of the defamation.

### 2. Protected Liberty Interest

As stated above, "a plaintiff can meet the stigma-plus test for Section 1983 purposes by alleging . . . the injury to reputation was inflicted in connection with a federally protected right[.]" *Eberhard*, 73 F. Supp. 3d at 1130. Here, the "stigma," or reputational injury is the allegedly defamatory statements made about Muse, and the "plus" is Chief Langford's alleged campaign that has prevented Muse from obtaining a position in law enforcement. Yet the cases Muse cites to refer to the infringement of liberty interests in the context of termination. With respect to cases dealing with terminations, courts are only concerned "with the type of stigma that seriously damages an individual's ability to take advantage of other employment opportunities." *Gray v. Union Cty. Intermediate Educ. Dist.*, 520 F.2d 803, 806 (9th Cir. 1975) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972). Muse attempts to latch onto the language of *Gray*, but this line of cases does not apply to this case. Muse does not bring his "stigma-plus" claim in the context of a termination.

This is significant because other courts have dismissed cases where the alleged defamation was not uttered in connection to a termination. *See Siegert v. Gilley*, 500 U.S. 226, 234 (1991); *see also Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002); *Murphy v. Goss*, 103 F. Supp. 3d 1234, 1241 (D. Or. 2015), *aff'd*, 693 F. App'x 636 (9th Cir. 2017). Even more problematic is the fact that the case Muse cites in his opposition actually hurts his case. Dkt. No. 18 at 18. In that case, *Murden v. Cty. of Sacramento*, the plaintiff's *termination* from public employment was based on incompetence (being unable to learn the basic duties of his job and being inordinately afraid of inmates) and his making inappropriate sexual comments. 160 Cal. App. 3d 302, 305 (1984). The appellate court found that the statements regarding his competency did not infringe upon his liberty interest, but the statements regarding his sexual comments did, and so he was entitled to a name-clearing hearing as to those charges. *Id*. at 308. Here, in contrast, the alleged statements made against Muse relate to his competency, not his character or morality.

Thus, as pled, Muse's § 1983 claim does not survive a motion to dismiss. However, because Muse could feasibly amend his complaint to allege a liberty interest, the Court GRANTS defendants' motion to dismiss WITH LEAVE TO AMEND.

### 3. Del Rey Oaks' *Monell* Liability

Muse alleges that he "is informed and believes that Defendant Del Rey Oaks has a long-standing and pervasive custom, policy, pattern, and well settled practice of discriminating against current and former employees based on race. Defendant Del Rey Oaks is a moving force behind this policy and custom." Dkt. No. 9 at 6. According to Muse's statements at the hearing on this motion, Muse seeks to hold the City of Del Rey Oaks liable for Chief Langford's statements under a theory of vicarious liability. Muse may not do so.

A city cannot "be held liable under a vicarious liability or respondeat superior theory in a § 1983 suit, for such liability would violate the evident congressional intent to preclude municipal liability in cases in which the city itself was not at fault." *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985). Yet a vicarious liability theory is clearly not what Muse is alleging. Instead, Muse alleges that the City "is a moving force" behind the alleged discrimination. As a result, the appropriate claim to allege under the circumstances is a *Monell* claim. Under that theory, a municipality may be held liable "when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *id.* at 691 ("Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."). A plaintiff may show a policy or custom of a municipality in three ways:

> (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich*, 308 F.3d at 984-85).

It appears that Muse seeks to hold Del Rey Oaks liable under the first theory. Muse needs to do more if he intends to hold Del Rey Oaks liable. The only factual allegation in the complaint against Del Rey Oaks is that the City, along with Chief Langford "blacklisted" him. Dkt. No. 9 at 5. Even assuming Del Rey Oaks "blacklisted" him, this is not evidence of a long-standing practice or custom constituting a standard operating procedure. Muse needs to allege that this blacklisting occurred to more people than just him. Muse's allegations regarding Sergeant Ingersoll's comments also are not sufficient to state a claim that Del Rey Oaks is the "moving force behind this policy or custom." *Id.* at 6. Thus, Muse must amend his § 1983 claim against Del Rey Oaks to comport with *Monell*. Otherwise, the Court will dismiss Del Rey Oaks as a defendant in this case.

## IV. CONCLUSION

State law claims 1, 3, 4, 5, and 6 are DISMISSED WITH PREJUDICE. Claim 2, the § 1983 claim is DISMISSED WITH LEAVE TO AMEND. Muse must file a motion for leave to file the Second Amended Complaint consistent with this order by February 1, 2018. Muse may not add parties or claims absent leave of Court. The Court will separately issue a case management scheduling order.

**IT IS SO ORDERED.**

Dated: January 18, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge