United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY MUSE,<br><br>   Plaintiff,<br><br>  v.<br><br>CITY OF DEL RAY OAKS, et al.,<br><br>   Defendants. | Case No. 17-cv-05323 NC<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 37 |

In this civil rights case, plaintiff Henry Muse alleges that defendants the City of Del Rey Oaks and police chief Ronald Langford blacklisted him from further employment as a law enforcement professional after Muse left the Del Rey Oaks Police Department. This alleged blacklisting occurred through negative employer evaluations regarding Muse that Chief Langford provided to inquiring law enforcement agencies. Muse also alleges that Del Rey Oaks had a policy and practice of discriminating against African American staff. Langford and Del Rey Oaks move to dismiss Muse's second amended complaint (SAC) under Federal Rule of Civil Procedure 12(b)(6).

The motion to dismiss is GRANTED WITH PREJUDICE as to the stigma-plus claim against Del Rey Oaks. The motion is GRANTED WITH LEAVE TO AMEND as to the stigma-plus claim against Chief Langford and the *Monell* claim against Del Rey Oaks.

**I. BACKGROUND**

The Court generally reiterates the factual background provided in the Court's

Case No. 17-cv-05323 NC

1 previous Rule 12(b)(6) order. Dkt. No. 25.

2 Muse was a Del Rey Oaks police officer from 2005 to 2013, when he alleges he was "forced to leave the Department after being the subject of an intolerable pattern of racial discrimination." Dkt. No. 36 at 2, 4. Muse claims he left Del Rey Oaks because Sergeant Robert Ingersoll, one of Chief Langford's subordinates, "routinely" hurled racial epithets at him. *Id.* at 4. Muse contends that Sgt. Ingersoll was terminated from a neighboring police department for civil rights violations against African Americans, but that Chief Langford hired him anyway. *Id.* This is not a wrongful termination lawsuit. *Id.* at 3.

Subsequent to leaving Del Rey Oaks, Muse sought employment in law enforcement in the San Diego Police Department, Fresno County Sheriff's Department, Santa Cruz Police Department, Hayward Police Department, Monterey County Sheriff's Department, Walnut Creek Police Department, Sacramento County Sheriff's Department, and Oakland Unified School District. *Id*. at 4. Muse was unable to gain employment at these agencies. Muse claims defendants are "haunting" him in his attempts to gain comparable employment through giving him negative reviews to prospective employers. *Id*. at 4-5. He claims Chief Langford and Del Rey Oaks are "blacklisting" him. *Id*. at 5. To support this contention, he cites to two incidents.

Officer Matthew Young, who appears to have been Muse's colleague at the department, received materials from Orange and Fresno Counties' background investigators regarding Muse. *Id*. at 4. Officer Young reportedly approached Chief Langford who told him: "I wouldn't even send it back. From what I'm going to tell them, they're never going to hire him." *Id*. (italics omitted). Chief Langford reportedly described Muse as "lazy" and that he "never did anything." *Id*. (italics omitted). Muse does not disclose language Chief Langford actually used in any of the reviews he submitted to Muse's prospective employers. The other instance Muse cites to is a question posed to him by a police department's background investigator. *Id*. at 5. According to Muse, the investigator asked him whether the people at the Del Rey Oaks Police Department were racist, given that they were the only ones who gave Muse a negative

evaluation. *Id.* Muse also refers to another incident with an investigator for another county in which the investigator said "I would not touch your file." *Id.*

Muse filed this lawsuit on September 13, 2017, and the Second Amended Complaint claims violations of 42 U.S.C. § 1983 under a "stigma-plus" theory and for *Monell* liability. *See id.* Defendants move to dismiss the SAC. Dkt. No. 37.

All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 7, 8.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

Muse's § 1983 claim has two theories: (1) "stigma-plus," and (2) a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Defendants move to dismiss Muse's § 1983 claim because (1) Muse cannot state a claim for defamation, (2) Muse suffered no injury to a constitutional right, and (3) Muse does not present facts

Case No. 17-cv-05323 NC            3

sufficient to support a *Monell* claim, even under Rule 12(b)(6). Dkt. No. 14 at 17-20. Muse disagrees on each point.

To prove a violation under § 1983, a plaintiff must show that (1) the defendant's conduct deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the defendant committed the act under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a claim under 42 U.S.C. § 1983 based on defamation, a plaintiff must do more than allege simple defamation by a state official. *Paul v. Davis*, 424 U.S. 693, 712 (1976). "Under that standard, to establish a deprivation of liberty, a plaintiff must show the public disclosure of a stigmatizing statement by the government, plus the denial of 'some more tangible interest such as employment,' or the alteration of a right or status recognized by state law." *Peter Turner v. City & Cty. of San Francisco*, No. 11-cv-01427 EMC, 2012 WL 6631490, at *6 (N.D. Cal. Dec. 19, 2012), *aff'd sub nom. Turner v. City & Cty. of San Francisco*, 788 F.3d 1206 (9th Cir. 2015), *and aff'd sub nom. Turner v. City & Cty. of San Francisco*, 617 F. App'x 674 (9th Cir. 2015) (brackets omitted) (quoting *Paul*, 424 U.S. at 701, 711).

"[A] plaintiff can meet the stigma-plus test for Section 1983 purposes by alleging either that (1) the injury to reputation caused the denial of a federally protected right (e.g., accusations made in the press by a prosecutor to deny a defendant an impartial jury under the Sixth Amendment); or (2) the injury to reputation was inflicted in connection with a federally protected right (e.g., defamation in the course of termination of public employment by the state)." *Eberhard v. California Highway Patrol*, 73 F. Supp. 3d 1122, 1130 (N.D. Cal. 2014) (citing *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991)).

**A.     Defamation**

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010) (citation omitted). In order to be defamatory, a statement must be a statement of fact, rather than a statement of opinion. *Morrow v. Los Angeles Unified Sch. Dist.*, 149 Cal. App. 4th 1424, 1443 (2007).

Case No. 17-cv-05323 NC         4

Yet an opinion "may still be actionable if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Id.* (citations omitted). "The issue whether a communication was a statement of fact or opinion is a question of law to be decided by the court." *Id.*

Muse claims on information and belief that "defendants" made defamatory statements to his prospective employers that Muse was lazy and never did anything. Dkt. No. 36 at 4. Muse alleges these statements are false. *Id.* For purposes of this motion, Muse sufficiently alleges Chief Langford defamed him based on the allegedly false and damaging review Chief Langford stated he intended to give Muse. Assuming for purposes of this motion that Chief Langford followed through with his intentions, only the statement that Muse never did anything would qualify as a factual statement. It is a close call, but stating that a police officer "never did anything" when the officer is attempting to find a new position *could* be defamatory. But as a matter of common sense, calling someone lazy is an opinion, and is not actionable. *See e.g., Botos v. Los Angeles Cty. Bar Assn.*, 151 Cal. App. 3d 1083, 1088-89 (1984) (finding that a statement that an attorney is not qualified to sit as a judge is an un-actionable opinion).

Like the First Amended Complaint, the Second Amended Complaint does not state a defamation claim against Del Rey Oaks. There are no allegations that Del Rey Oaks, as an entity, defamed him. As noted in the Court's previous order, the only way Muse could state such a claim would be through a *Monell* claim, which he attempts to do. He may not vicariously hold Del Rey Oaks liable for the alleged malfeasance of a bad actor, and so any stigma-plus § 1983 action against Del Rey Oaks is DISMISSED WITH PREJUDICE.

### B. Protected Liberty Interest

The Court next considers whether Muse alleged sufficient facts to conclude that Chief Langford violated a protected liberty interest. As stated above, "a plaintiff can meet the stigma-plus test for Section 1983 purposes by alleging . . . the injury to reputation was inflicted in connection with a federally protected right[.]" *Eberhard*, 73 F. Supp. 3d at 1130. Here, the "stigma," or reputational injury is the allegedly defamatory statements

Case No. 17-cv-05323 NC 5

made about Muse, and the "plus" is Chief Langford's alleged campaign that has prevented Muse from obtaining a position in law enforcement.

Courts have dismissed cases where the alleged defamation was not uttered in connection to a termination. *See Siegert v. Gilley*, 500 U.S. 226, 234 (1991); *see also Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (noting that the remedy for a stigma-plus claim is a fairness hearing); *Murphy v. Goss*, 103 F. Supp. 3d 1234, 1241 (D. Or. 2015), *aff'd*, 693 F. App'x 636 (9th Cir. 2017). In its previous order, the Court informed Muse that he had not sufficiently alleged a violation of a protected liberty interest. Dkt. No. 25 at 10; *see also Harrington v. City of Portland*, 677 F. Supp. 1491, 1500-01 (D. Or. 1987) ("to state a claim for deprivation of a liberty interest of constitutional magnitude, the charges made against Harrington by Clark must have surpassed subjects relating to incompetence or the inability to get along with others or lack of judgment and trust. The charges must constitute accusations of moral turpitude such as dishonesty or immorality."). Muse has not stated a stigma-plus claim, and his opposition to defendants' motion is bare-bones, lacking in legal argument, and does not address the Court's previously stated concerns.

This is the third iteration of the complaint in this case. In an abundance of caution, the Court will give Muse one final chance to cure his stigma-plus claim against Chief Langford. Should Muse fail to cure this claim, the Court will dismiss this claim with prejudice. The Court GRANTS defendants' motion to dismiss WITH PREJUDICE as to Del Rey Oaks, and WITH LEAVE TO AMEND as to Chief Langford.

**C.     Del Rey Oaks' *Monell* Liability**

Muse alleges that he "is informed and believes that Defendant Del Rey Oaks has a long-standing and pervasive custom, policy, pattern, and well settled practice of discriminating against current and former African American employees based on race." Dkt. No. 36 at 6.

A municipality may be held liable under *Monell* "when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose

Case No. 17-cv-05323 NC                 6

edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *id.* at 691 ("Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."). A plaintiff may show a policy or custom of a municipality in three ways:

> (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich*, 308 F.3d at 984-85). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The Ninth Circuit has previously held that two incidents are insufficient to prove a custom under *Monell*. *Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988). "A longstanding practice or custom is one that is so 'persistent and widespread' that it constitutes a 'permanent and well settled' governmental policy." *Bagley v. City of Sunnyvale*, No. 16-cv-02250 JSC, 2017 WL 5068567, at *4 (N.D. Cal. Nov. 3, 2017) (quoting *Trevino*, 99 F.3d at 918).

Other than his own experience, Muse points to the experience of Milton Carter, "who also suffered under [Del Rey Oaks'] racially charged and discriminatory environment." Dkt. No. 36 at 6. Muse points to one incident involving Mr. Carter:

> Plaintiff is informed and believes that Del Rey Oaks' former city manager, Daniel Dawson, threw a $20 bill on Mr. Carter's desk and asked him to cut weeds in his yard. Mr. Carter felt this work was a misuse of city funds, returned the bill, and refused to appear at Mr. Dawson's house. According to Mr. Carter's government tort claim, "Dawson became enraged by his refusal to perform the maintenance work on his private property." Mr. Carter approached Defendant Langford, his supervisor and Chief of Police at the time, about Mr. Dawson's demand.

Case No. 17-cv-05323 NC 7

> Defendant Langford ordered Mr. Carter to return to Dawson's property and perform the work. Mr. Carter complied because he feared losing his job. Plaintiff is informed and believes that several months later, Defendant Langford terminated Mr. Carter without providing a reason. Mr. Carter alleged discrimination and wrongful termination in his government tort claim against Defendants Del Rey Oaks and Ronald Langford. The parties reached a settlement in or about September 2017.

*Id.* at 6-7.

Muse seeks to hold Del Rey Oaks liable under the first theory: that the racial discrimination is longstanding custom or procedure. The problem with this claim that proves fatal is that there is no apparent relation between what allegedly happened to Muse and what allegedly happened to Mr. Carter except for Chief Langford. But what is the longstanding practice or custom that gives rise to the *Monell* claim? Muse claims he was the victim of blacklisting and the receiver of racial epithets, while Mr. Carter was allegedly ordered in a degrading manner to cut weeds and was later fired. If their experiences were alleged to be more similar, Muse might be able to squeeze by a 12(b)(6) motion, but they are not. As far as the Court knows, the incident with Mr. Carter was an isolated one. And that is insufficient to state a *Monell* claim. *Trevino*, 99 F.3d at 918. Without support, bare legal assertions that Del Rey Oaks has a practice of discriminating against current and former African American employees are insufficient.

The other problem with the *Monell* claim is that the conduct Mr. Carter allegedly suffered does not in itself raise an inference of discrimination. If true, the incident with the $20 bill surely demonstrates disrespect and is reprehensible. But it does not raise the inference of *racial* discrimination against African Americans, which *is* what Muse alleges. Dkt. No. 39 at 6 ("Twelve straight years of discriminatory conduct against 100% of the African Americans employed at Del Rey Oaks during that timeframe"). As far as the Court's knows, Mr. Carter has not alleged that Del Rey Oaks staff also hurled racial epithets at him. The Monell claim is dismissed WITH LEAVE TO AMEND.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS defendant's motion to dismiss. The motion is GRANTED WITH PREJUDICE as to the stigma-plus claim against Del

Case No. 17-cv-05323 NC    8

Rey Oaks. The motion is GRANTED WITH LEAVE TO AMEND as to the stigma-plus claim against Chief Langford and the *Monell* claim against Del Rey Oaks.

Muse may file a third amended complaint, but must do so by May 10, 2018, or the Court will terminate the case without further notice. Muse may not add further claims or defendants without advance leave of Court.

**IT IS SO ORDERED.**

Dated: April 26, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge